# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ILLIA KORNEA : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 18-2708 |
| : | |
| J.S.D MANAGEMENT, INC. *et al.* : | |
|     Defendants. : | |

## OPINION

**Rufe, J.**                                                                                                               **February 6, 2019**

      Plaintiff Illia Kornea, proceeding *pro se*, filed suit against JSD Management, Inc., DexYP, Kelly Hendrick,[1] Darcy Clark, Bryan Williams,[2] and Does 1 through 100,[3] asserting various federal, state, and common law claims related to an attempted debt collection. Defendants JSD, DexYP, Hendrick, and Clark have moved to dismiss for failure to state a claim upon which relief can be granted. Defendants Hendrick and Clark have also moved for dismissal for insufficient service of process. For the reasons set forth below, the Court will grant Defendants' motions to dismiss.

    **I.**     **BACKGROUND**[4]

      The Amended Complaint does not make clear what Plaintiff's relationship was with Defendants or how she has interreacted with them. This confusion is caused in part by the Amended Complaint's frequent references to the interactions between Defendants and an individual named Nick Kornea, who is not a party to this case, without explaining who he is or

---

[1] Kelly Hendrick is the President of JSD Management, Inc.

[2] Defendant Bryan Williams has not been served and has not appeared in this case.

[3] No true names or specific positions within Defendant companies have been provided to identify Does 1 through 100.

[4] The following facts, alleged in the Complaint, are assumed to be true for purposes of these motions to dismiss unless otherwise stated.

what his relationship is to Plaintiff. However, the exhibits appended to the Amended Complaint suggest that Plaintiff and Nick Kornea own a business called Luxury Bath & Kitchens together.

On November 29, 2016, Nick Kornea signed a contract with Defendant DexYP by which DexYP would provide advertising services for Luxury Bath & Kitchens.[5] Defendant Williams, an employee of DexYP, informed Nick Kornea through email that he could opt-out of the contract for advertising services after three months if he no longer wanted the services.[6] After three months of receiving advertising services, and dissatisfied with the returns from the ads placed pursuant to the contract, Nick Kornea contacted Williams to cancel the contract. Williams and Nick Kornea met in person on March 22, 2017, and the contract was canceled the same day.

Plaintiff asserts that, despite the contract's cancelation, Defendants have attempted to collect a $2,345.92 debt purportedly still owed under the contract. On December 16, 2017, Plaintiff alleges that she began receiving phone calls from Defendant Darcy Clark[7] on behalf of JSD, a corporation engaged in the collection of commercial debts, seeking to collect this debt. Plaintiff requested verification from JSD of the origins of the alleged debt owed by Plaintiff. Plaintiff never received such verification, and continued to receive calls and default letters from JSD seeking to collect the alleged debt. All of the communications, copies of which are attached to the Amended Complaint, are addressed to Luxury Bath & Kitchens, not Plaintiff.[8] Plaintiff,

---

[5] The contract for advertising services with DexYP, appended to the Amended Complaint, was signed by a Nick Kornea as "owner" of Luxury Bath & Kitchens. Contract, Am. Compl. Ex. 2 [Doc. No. 7] at 8. However, Plaintiff occasionally contradicts the information she provided by suggesting t hat she signed the contract. *See, e.g.,* Obj. Mot. Dismiss Hendrick and Clark [Doc. No. 41] at 6.

[6] Emails, Am. Compl. Exs. 3, 4 [Doc. No. 7]. The emails, appended to the Amended Complaint, clearly show that the emails were exchanged between Bryan Williams and Nick Kornea. However, Plaintiff occasionally contradicts this information that she provided by suggesting that she was the recipient of these emails. *See, e.g.,* Am. Compl. at 19.

[7] Darcy Clark is the alias used by Cheryl Rowe when she collects debts on behalf of JSD. Clark Aff. [Doc. No. 36-3] at 3.

[8] Am. Compl. Ex. 5, 9 [Doc. No. 7].

writing on letterhead of Luxury Bath & Kitchens, sent JSD cease-and-desist letters and put her name on the National Do Not Call Registry.[9] Plaintiff asserts that Defendant Kelly Hendrick, as the President of JSD, is also liable for this conduct.[10]

Plaintiff originally filed a complaint against Defendants JSD, Hendrick, Clark, and Does 1 through 100 in the Court of Common Pleas of Bucks County. Defendants removed the case to this Court and Plaintiff then filed an Amended Complaint, stating eleven causes of action and adding additional Defendants including Bryan Williams and DexYP. Defendants moved to strike the Amended Complaint for failure to comply with Fed. R. Civ. P. 15(a)(2), which this Court denied.[11] Defendants Hendrick and Clark also moved to dismiss the claims against them for insufficient service of process, which this Court granted in part, allowing Plaintiff 30 days to properly effectuate service of process pursuant to Fed. R. Civ. P. 4.[12]

## II.   LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(5)

Effective service of process is a prerequisite to the court's personal jurisdiction over a defendant.[13] "In resolving a motion under Rule 12(b)(5), the party making the service has the

---

[9] Am. Compl. Exs. 7, 8, 10, 11 [Doc. No. 7].

[10] Plaintiff alleges that these circumstances are not unique to her, and that DexYP has engaged in similar conduct with other customers. In support, Plaintiff has appended to the Amended Complaint an article from "Ripoff Report," which provides anecdotes of other DexYP customers who believe they were improperly billed after their contract end-date. Am. Compl. Ex. 12 [Doc. No. 7].

[11] Mem. [Doc. No. 24] at 2.

[12] Mem. [Doc. No. 24] at 7.

[13] *Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3d Cir. 1991).

burden of demonstrating its validity when an objection to service is made."[14] The party must prove that service was properly effectuated by a preponderance of the evidence.[15]

### B. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"[16] and "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element" of a claim.[17] Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[18] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[19]

In evaluating a challenged complaint, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[20] Although the Court must draw all reasonable inferences from the allegations in favor of the plaintiff,[21] it "need

---

[14] *Reed v. Weeks Marine, Inc.*, 166 F. Supp. 2d 1052, 1054 (E.D. Pa. 2001) (citing *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488–489 (3d Cir. 1993)).

[15] *Digenova v. UNITE HERE Local 274*, No. 16–1222, 2016 WL 3144267, at *2 (E.D. Pa. June 6, 2016).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

[17] *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[18] *Twombly*, 550 U.S. at 555 (citations and footnotes omitted).

[19] *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation omitted). At the motion to dismiss stage, a court determines only whether a plaintiff will be permitted to seek evidence in support of the claims in the complaint. *See Twombly*, 550 U.S. at 556, 558–59.

[20] *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (quotation marks omitted).

[21] *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010).

not accept as true unsupported conclusions and unwarranted inferences,"[22] or the plaintiff's "bald assertions" or "legal conclusions."[23] The Court has no duty to "conjure up unpleaded facts that might turn a frivolous…action into a substantial one."[24] Additionally, where, as here, the plaintiff is proceeding *pro se*, the court must construe her allegations liberally.[25]

### III. DISCUSSION

#### A. Hendrick and Clarks' Motion to Dismiss for Insufficient Service of Process

Hendrick and Clark have also moved to dismiss the Amended Complaint for insufficient service of process. Plaintiff has failed to provide a copy of the Amended Complaint when she attempted to serve the summonses,[26] and she has failed to comply with the rules governing service of process by effectuating service personally.[27] Therefore, the Court will grant Defendants Hendrick and Clark's motion to dismiss for insufficient service of process under Fed. R. Civ. P. 12(b)(5). Because Plaintiff was already granted additional time to effectuate service and has failed to do so, she will not be given any further opportunities to effectuate service.[28]

---

[22] *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (internal quotation marks and citations omitted).

[23] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 628 (1st Cir. 1996)) (quotation marks omitted).

[24] *Twombly*, 550 U.S. at 562 (quoting *McGregor v. Indus. Excess Landfill, Inc.*, 856 F.2d 39, 42–43 (6th Cir. 1988)).

[25] *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[26] *See* Decl. in Supp. of Obj. to Mot. to Dismiss [Doc. No 33]; Mot. to Dismiss [Doc. No. 36].

[27] Plaintiff's submissions to the Court show that she delivered the summons in person. Specifically, on the Certificate of Service for both summons, Plaintiff wrote, "[h]and delivered by myself at above address." *See* Decl. in Supp. of Obj. to Mot. to Dismiss [Doc. No. 33] at 7, 10. The rules do not allow such personal service of process. Fed. R. Civ. P. 4(c)(2) ("Any person who is at least 18 years old and *not a party* may serve a summons and complaint") (emphasis added); Pa. R. Civ. P. 400(b) (authorizing service of original process by a "competent adult"); Pa. R. Civ. P. 76 (defining "competent adult" a "an individual eighteen years of age or older who is *neither a party to the action* nor an employee or a relative of a party") (emphasis added).

[28] Defendants Hendrick and Clark have also argued that the summons was served on Talbot, an Account Manager, and not Defendants, and that Talbot was not authorized to accept service of process. Because Plaintiff improperly effected service of process personally, and without the Amended Complaint, the Court need not address this argument.

5

**B. Motions to Dismiss for Failure to State a Claim by Defendants DexYP, JSD, Hendrick, and Clark.**

   **1.     Telemarketing Sales Rule**

Plaintiff alleges that Defendants violated the Telemarketing Sales Rule ("TSR"), which prohibits deceptive or abusive telemarketing acts or practices.[29] The Act defines "telemarketing" as "a plan, program, or campaign which is conducted to induce purchases of goods or services, or a charitable contribution, donation, or gift of money or any other thing of value, by use of one or more telephones and which involves more than one interstate telephone call."[30]

Plaintiff does not allege any "telemarketing" activity by Defendants. In her Amended Complaint, Plaintiff asserts that "Defendants, its agents, or subagents have provided … services on behalf of persons who are 'telemarketers' engaged in 'telemarketing.'"[31] However, as Defendants correctly contend, Plaintiff does not allege anywhere in her Amended Complaint that any Defendants engaged in the type of conduct that would constitute telemarketing under the TSR. Specifically, as to DexYP, Plaintiff alleges that Nick Kornea signed a contract with DexYP, but does not allege that this was the product of a "plan, program, or campaign … to induce purchases of goods or services" through interstate phone calls.[32] Plaintiff alleges that the remaining Defendants have been attempting to collect a debt from her, not induce her to

---

[29] 16 C.F.R. §§ 310.3, 310.4. The TSR was codified under the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101–08.

[30] 15 U.S.C. § 6106(4); 16 C.F.R. § 310.2(gg).

[31] Am. Compl. at 14.

[32] In response to DexYP's motion to dismiss, Plaintiff asserts, for the first time, that the advertising contract from which the alleged debt originated was a product of a call from a telemarketer; however, even had this additional allegation been made in the complaint, Plaintiff has still failed to allege any "plan, program, or campaign" or "more than one interstate telephone call." Moreover, any such solicitation for a contract for advertising services would have been directed at Luxury Bath & Kitchens, and calls between a telemarketer and a business to induce the purchase of services are exempt from the regulations. *See* 16 C.F.R. § 310.6(b)(7).

purchase goods or services or make a charitable donation. Therefore, Plaintiff's claims under the TSR will be dismissed with prejudice.[33]

### 2. Federal Trade Commission Act

Plaintiff asserts a claim under the Federal Trade Commission Act, which prohibits unfair methods of competition and unfair or deceptive acts or practices.[34] However, "private parties are not authorized to file enforcement actions, only the FTC has that authority."[35] Therefore, this claim will be dismissed with prejudice.

### 3. Wire Fraud and Mail Fraud

Plaintiff alleges claims of wire fraud and mail fraud. However, as Defendants correctly assert, wire fraud and mail fraud are criminal statues that do not provide for a private cause of action.[36] Accordingly, these claims will be dismissed with prejudice.

### 4. Lulling Letters, Telegrams and Telephone Calls

Plaintiff's cause of action entitled "Lulling Letters, Telegrams and Telephone Calls," appears to be a continuation of, and derivative of, Plaintiff's claims of mail fraud and wire fraud, and it will be dismissed with prejudice for the same reasons.

---

[33] Plaintiff also alleges that Defendants "provided substantial assistance or support to sellers or telemarketers" in violation of the Act. Am. Compl. at 15. However, a claim of assisting or supporting a violation of the Act requires that there be an underlying violation of the Act.

[34] 15 U.S.C. § 45.

[35] *Taggart v. GMAC Mortg., LLC*, No. 12-415, 2012 WL 5929000, at *6 (E.D. Pa. Nov. 26, 2012) (citations omitted); *see also Flores v. OneWest Bank, F.S.B.*, 886 F.3d 160, 167 (1st Cir. 2018).

[36] *Addlespurger v. Corbett*, 461 F. App'x 82, 87 (3d Cir. 2012).

5. **RICO**

Plaintiff has alleged violations of the RICO statute, which prohibits racketeering and unlawful debt collection.[37] To state a claim under this statute, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[38] "Racketeering activity" refers to various state and federal offenses, two of which are the mail fraud and wire fraud statutes.[39] A "pattern of racketeering activity" is established with proof of the commission of at least two acts of racketeering activity (known as predicate acts) within a ten-year period.[40]

Here, Plaintiff alleges that the predicate acts are violations of the mail and wire fraud statutes.[41] The RICO statue allows for a private right of action by a plaintiff who has been injured by such predicate acts.[42] The elements necessary to establish mail or wire fraud are: "(1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with the specific intent to defraud; and (3) the use of the United States mail or of wire communications in furtherance of the fraudulent scheme."[43] Plaintiff's conclusory allegations that Defendants "did cooperate jointly and severally in the commission of 2 or more of the RICO predicate acts,"[44] are not sufficient to state a claim under RICO. She has not alleged, for

---

[37] *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.").

[38] *In re Insurance Brokerage Antitrust* Litigation, 618 F.3d 300, 362 (3d Cir. 2010) (quotation and citation omitted); 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.").

[39] 18 U.S.C. § 1961(1).

[40] 18 U.S.C. § 1961(5).

[41] Am. Compl. at 24.

[42] 18 U.S.C. § 1964(c); *Schrager v. Aldana*, 542 F. App'x 101, 103 (3d Cir. 2013).

[43] *United States v. Syme*, 276 F.3d 131, 142 n.3 (3d Cir. 2002); *see also Walter v. Palisades Collection, LLC*, 480 F. Supp. 2d 797, 803 (E.D. Pa. 2007).

[44] Am. Compl at 25.

example, that DexYP entered into the contract with an intent to defraud, or that the debt, which she contests, is a result of a failure to cancel the contract as agreed to. Plaintiff has also failed to allege any scheme between DexYP and those Defendants seeking to collect a debt. As Plaintiff has alleged nothing more than a business dispute, and has failed to allege any purported scheme that targeted her personally, rather than Luxury Bath & Kitchens, Plaintiff has not met the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and her RICO claim will be dismissed with prejudice.

### 6. Pennsylvania Unfair Trade Practices and Consumer Protection Law

Plaintiff alleges violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[45] Plaintiff alleges that Defendants' representations and conduct relating to the contract for advertising services was deceptive.[46] However, an individual who incurs damages as a result of such unfair or deceptive acts may file suit only if they purchased goods or services "primarily for personal, family or household purposes"[47]; purchases made for business reasons are not protected.[48] Here the advertising services purchased for Luxury Bath & Kitchen were for business reasons. Therefore, Plaintiff does not have standing under this law, and this claim will be dismissed with prejudice.

---

[45] 73 P.S. § 201-3.

[46] Am. Compl. at 26.

[47] 73 P.S. § 201-9.2.

[48] *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002) ("Pennsylvania courts have distinguished purchases made for business reasons, which are not actionable, from those made for 'personal, family or household use.'") (quoting *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001)).

### 7. Infliction of Emotional Distress

In her Amended Complaint, Plaintiff asserts a claim for "Infliction of Emotional Distress."[49] Defendants contend that this claim should be dismissed because Plaintiff failed to allege that they engaged in any "outrageous" conduct, as required to recover for intentional infliction of emotional distress.[50] To state a claim, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[51] In a debtor-creditor relationship, "the plaintiff must show an extreme and outrageous abuse of the collection procedure used by the debt collector."[52]

In the Amended Complaint, Plaintiff claims that Defendants were trying "to bully more money" out of her through repeated telephone calls and letters.[53] However, Courts in this Circuit have determined that mere phone calls and letters may be at times offensive, undesirable, and annoying, but are not so outrageous or extreme as to exceed all possible bounds of decency.[54] As Plaintiff has failed to allege any other facts that would suggest that Defendant's committed outrageous conduct, she has failed to state a claim for intentional infliction of emotional distress.

In response to Defendants' motions to dismiss, Plaintiff has asserted that she also intended to bring a cause of action for negligent infliction of emotional distress, which the

---

[49] Am. Compl. at 13.

[50] To recover for intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct; (2) that was either intentional or reckless; (3) which caused emotional distress; and (4) that the emotional distress must be severe. *Jordan v. City of Philadelphia*, 66 F.Supp.2d 638, 642 (E.D. Pa. 1999).

[51] *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987).

[52] *Brignola v. Home Props., L.P.*, No. 10-3884, 2013 WL 1795336, at *13 (E.D. Pa. April 26, 2013).

[53] Am. Compl. at 13.

[54] *See Brignola*, 2013 WL 1795336, at *13 (holding that use of letters and phone calls to solicit payment for a debt did not rise to the level of outrageous conduct for intentional infliction of emotional distress).

Amended Complaint did not explicitly set forth. Regardless, Plaintiff has not alleged any physical impact to herself or others, or any contractual or fiduciary relationship that implies a duty to care for Plaintiff's well-being,[55] as required to state a claim for negligent infliction of emotional distress, and no such claim will be entertained.[56] Plaintiff's claim for infliction of emotional distress will therefore be dismissed with prejudice.

### 8. Fraud

Plaintiff alleges that Defendants committed fraud in relation to the advertising contract between Luxury Bath and DexYP. Under Pennsylvania law, Plaintiff must allege "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."[57]

As Defendants correctly assert, it is not clear from the amended complaint that the alleged debt was caused by a failure to cancel the contract with DexYP as allegedly promised. Additionally, Plaintiff has not adequately pleaded how *she* relied on any purported misrepresentations made regarding the advertising contract. The contract with DexYP was appended to the Amended Complaint, and it was clearly signed by Nick Kornea as "owner" of

---

[55] *Siler v. Cmty. Educ. Ctrs., Inc.*, No. 14–5019, 2014 WL 4931291, at *7 n.7 (E.D. Pa. Oct. 2, 2014) (quoting *Toney v. Chester Cty. Hosp.*, 36 A.3d 83, 95 (Pa. 2011)) ("Not just any contractual or fiduciary relationship will suffice for NIED liability, but only those relationships that involve 'duties that obviously and objectively hold the potential of deep emotional harm in the event of breach' and which 'encompass an implied duty to care for the plaintiff's emotional well-being.'").

[56] To recover for negligent infliction of emotional distress, a plaintiff must prove physical injury and emotional distress arising from one of the following elements: (1) Defendants' breach of a contractual or fiduciary duty toward her; (2) physical impact to Plaintiff; (3) Plaintiff's contemporaneous observation of physical injuries inflicted on a close family member; or (4) nearly experiencing immediate physical impact. *Wilder v. United States*, 230 F.Supp.2d 648, 653–54 (E.D. Pa. 2002) (citing *Doe v. Philadelphia Comty. Health Alts.*, 745 A.2d 25, 27 (Pa. Super. 2000)).

[57] *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994).

11

Luxury Bath & Kitchens. The discussion regarding the contract's opt-out clause was also between Williams and Nick Kornea, and the contract was canceled by Nick Kornea. As there are no allegations of fraud directed against Plaintiff personally, the claim will be dismissed with prejudice.

### 9. Breach of Fiduciary Duty

Plaintiff alleges that Defendants breached a fiduciary duty to her; however, Plaintiff has not alleged facts to suggest that any fiduciary or confidential relationship existed between herself and Defendants.[58] Specifically, Plaintiff has not alleged any relationship between herself and the Defendants involved with debt collection, and the contract with DexYP was signed by Nick Kornea for the benefit of Luxury Bath & Kitchen.

"A business association may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his affairs to the other,"[59] and where the "confidential relationship 'is marked by such a disparity in position that the inferior party places complete trust in the superior party's advice.'"[60] An ordinary business transaction does not create such a relationship when a contract is negotiated at arm's length.[61] Therefore, even if Plaintiff herself were a party to any business relationship with DexYP or Williams pursuant to the advertising agreement, which has not been alleged, she has not pleaded any facts to suggest that

---

[58] *Reese v. Pook & Pook, LLC*, 158 F. Supp. 3d 271, 298 (E.D. Pa. 2016).

[59] *In re Scott's Estate*, 316 A.2d 883, 886 (Pa. 1974).

[60] *Tekman v. Berkowitz*, 639 F. App'x 801, 806 (3d Cir. 2016) (quoting *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 23 (Pa. Super. Ct. 2002)).

[61] *Harold ex rel. Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005) (dismissing a fiduciary duty claim because the parties were unrelated and negotiated a contract at arm's length); *Valley Forge Convention & Visitors Bureau v. Visitor's Services, Inc.*, 28 F. Supp. 2d 947, 953 (E.D. Pa. 1998) (giving a defendant substantial control over the plaintiff's advertising support did not create a "special relationship").

"substantial control" of the business had been surrendered or that the parties were not dealing on equal terms, and this claim will be dismissed with prejudice.

## IV.     Conclusion

For the reasons stated above, the Court will grant the motions to dismiss. All of Plaintiff's claims against Defendants Hendrick, Clark, DexYP, and JSD are dismissed with prejudice. An appropriate order will be entered.